**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

|  |  |  |
|---|---|---|
| **ARNULFO CHAVERA,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:04-CV-0192-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**REPORT AND RECOMMENDATION**</u>

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 21, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on March 29, 2005, Defendant filed her brief on May 2, 2005, and Plaintiff filed his reply on May 16, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on March 25, 2002, alleging disability beginning January 1, 2002.  The SSI application had a protective filing date of March 14, 2002.  Tr. 17, 270-73, 306-08.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 17, 275-84, 309-12.  Plaintiff filed a Request for Hearing by Administrative Law Judge on March 10, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on July 10, 2003.  Tr. 17, 31-32, 35-55.  Plaintiff, represented by an attorney, testified in his own behalf.  Tr. 17, 37-54.  Michael Driscoll, a vocational expert ("VE"), appeared but did not testify.  Tr. 17.  The ALJ issued a decision unfavorable to Plaintiff on October 31, 2003.  Tr. 14-26.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that Plaintiff met the disability insured status requirements on January 1, 2002, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since January 1, 2002.  Tr. 18, 25.  He found that Plaintiff has "severe" impairments, including ischemic heart disease, status-post angioplasty; congestive heart failure; hypertension; obesity, and a history of tobacco abuse.  Tr. 21, 25.  He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 22-23, 25.

The ALJ found that Plaintiff could not return to his past relevant work as a make-ready attendant at a car dealer or a deliveryman. Tr. 24, 26. He noted that Plaintiff was considered a "younger individual" with a marginal (5th grade) education. *Id.*

The ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work activity. Tr. 26. He found that there were a significant number of jobs within his functional capacity in the national economy and, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 25, 26.

Plaintiff submitted a Request for Review of Hearing Decision/Order on December 12, 2003. Tr. 11-13. Plaintiff apparently sought a copy of the hearing tape which was sent on April 2, 2004, and he was given an extension of 25 days. Tr. 9-10. The Appeals Council issued its opinion on June 17, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and additional evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 4-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 21, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309

F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the

Commissioner's, even if the court believes that the evidence weighs against the Commissioner's

decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not

the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

　　　In order to qualify for disability insurance benefits or supplemental security income, a

claimant has the burden of proving that he or she has a medically determinable physical or mental

impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful

activity.  Substantial gainful activity is defined as work activity involving significant physical or

mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§ 404.1527(a)(1).

　　　The Commissioner follows a five-step process for determining whether a claimant is disabled

within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled

because he retained the ability to perform work in the national economy.  Tr. 25, 26.

## III.  DISCUSSION

　　　Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by

substantial evidence because the ALJ erred in making his credibility finding; did not appropriately

weigh and consider the opinion of Plaintiff's treating physician; did not properly consider the

combined or cumulative impact of all of Plaintiff's impairments including Plaintiff's obesity; erred

by picking and choosing only the evidence which supported his decision; and inappropriately

applied the Medical-Vocational Guidelines ("Grids") to direct a finding that Plaintiff was not

disabled.

**A.      Whether the ALJ erred in making his credibility determination.**

Plaintiff alleges that the ALJ erred in making his credibility determination in several respects.   First, he argues that the ALJ erred in evaluating Plaintiff's subjective complaints as required by Soc. Sec. Ruling 96-7p (July 2, 1996)("SSR 96-7p"), Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p"), and 20 C.F.R. § 404.1529.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.   The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms.   The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.   For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

In his opinion the ALJ correctly noted that pursuant to 20 C.F.R. §§ 404.1508, 404.1529, 416.908, and 416.929 and SSR 96-7p, he must consider the medically determinable impairments which could reasonably be expected to produce the pain or other symptoms alleged.   Tr. 18.   The ALJ noted that Plaintiff has medically determinable, severe impairments.   *Id.*   The ALJ thereafter turned to the evidence in the record and the degree to which such evidence supported Plaintiff's subjective allegations.

Plaintiff argues that the ALJ failed to make the findings required by SSR 96-7p in making his credibility determination.  Plaintiff alleges that the ALJ "simply made a conclusory statement that he evaluated Chavera's testimony and other statements."  Pl. Brief at 13.

The ALJ noted in his opinion that Plaintiff reported to the ER with complaints of sub-sternal chest pain on January 14, 2002.  Tr. 18.  The ALJ discussed the clinical findings including clear lungs and regular heart rate, chest x-rays demonstrating marked cardiac enlargement and a hazy prominence of the pulmonary vasculature, and the results of an ECG.  *Id.*  He noted that Plaintiff was referred to a cardiologist for stress testing, which revealed a small reversible perfusion defect of the inferior left ventricular myocardium consistent with stress-induced ischemia.  *Id.*  He discussed the findings upon consultative examination of Dr. Cezary Kuprianowicz, including his diagnosis of coronary artery disease and his advice to abstain from strenuous exercise, heavy lifting, and smoking.  Tr. 19.  The ALJ noted a subsequent chest x-ray performed on February 7, 2002, which revealed a mild enlargement of Plaintiff's heart and mild hyperaeration of his lungs.  *Id.*  He noted Plaintiff's treatment on March 17, 2002, for complaints of shortness of breath and chest pain. *Id.*  The ALJ noted that the record indicated that Plaintiff next sought treatment on August 30, 2002, for chest pain and was noted by Dr. Michael David Stephens to have bilateral pedal edema, a productive cough, and mildly elevated blood pressure.  *Id.*  The ALJ noted Dr. Stephens' diagnosis of ischemic heart disease, hypertension, and hyperlipidemia and his recommendation of medication for treatment.  *Id.*

The ALJ also discussed Plaintiff's reports of recurrent chest pain, status post-angioplasty, and shortness of breath, as related to Dr. Nam H. Kim.  Tr. 20.  He indicated Dr. Kim's diagnosis of coronary artery disease, status-post angioplasty, hypertension, obesity, and ongoing tobacco abuse, as well as Dr. Kim's recommendation that Plaintiff abstain from smoking and undergo further tests.  *Id.*  He noted that on December 23, 2002, Plaintiff underwent a consultative examination;

reported to the examiner a history of two balloon angioplasties and an ischemic attack in January 2002 (although the records were lost); reported a stabbing chest pain which occurred twice weekly but which was alleviated within ten minutes after taking nitroglycerine; reported his complaints of fainting, shortness of breath on exertion, and some knee pain; and acknowledged his continued smoking. *Id.* The ALJ also noted that upon examination, Plaintiff demonstrated decreased breath sounds in both bases, a finding provisionally attributed to his morbid obesity, 2+ edema in both knees, venous stasis dermatitis, and a mild varicose vein. *Id.* He noted that a chest x-ray revealed considerable cardiomegaly, but an echocardiogram was within normal limits. Tr. 20-21. He noted that Dr. Pankaj Patel diagnosed congestive heart failure with a questionable history of transient ischemic attack. Tr. 21.

The ALJ noted that Plaintiff next sought treatment for his cardiac issues on March 22, 2003, when he presented to Dr. Kuprianowicz with complaints of chest pain off and on for the previous 24 hours and a non-productive cough. Tr. 21. He noted Dr. Kuprianowicz's note indicating that Plaintiff continued to smoke approximately a pack of cigarettes daily and that he had bronchial sounds at the lung bases. *Id.* He noted that a chest x-ray indicated mild hyperaeration of Plaintiff's lungs, which were otherwise clear of acute infiltrate, and that there was mild-to-moderate enlargement of the heart. *Id.* The ALJ noted that Plaintiff's physician diagnosed chest pain, ateriosclerotic heart disease, mild congestive heart failure, and new onset diabetes. *Id.* He noted that Plaintiff also reported chest pain to Dr. Kuprianowicz on April 1 and May 2, 2003, with stable vitals on examination and physical findings which were completely within normal limits with no neurological deficits noted. *Id.*

In addition to Plaintiff's medical history, the ALJ also addressed Plaintiff's testimony regarding his symptoms. He noted Plaintiff's testimony that he continues to have chest pain once or twice a day, which sometimes does not respond to nitroglycerine, experiences shortness of breath,

and has poor circulation and swelling in his feet. Tr. 22. He noted Plaintiff's testimony indicating that he sits with his feet elevated, he cannot walk far, strenuous postural movements and lifting/carrying aggravated his symptoms, and his hands swelled when he used them. *Id*. He also noted that Plaintiff testified that he drove his child to school, walked about 20 minutes for exercise, spent most of his time resting, and did not assist with any household chores or yard work. *Id*. He also noted that Plaintiff testified that his heart and arthritic medications were always effective and denied adverse side effects other than drowsiness. *Id*. The ALJ specifically noted that he evaluated Plaintiff's testimony and other statements regarding his daily activities, restrictions, and symptoms; the location, duration, frequency, and intensity of Plaintiff's subjective complaints; the precipitating and aggravating factors; the type, dosage, effectiveness, and side-effects of medication; the prescribed regimen; and any other palliative measures that Plaintiff may use, citing 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7p. *Id*.

Although Plaintiff argues that the ALJ "failed to make express findings as to the credibility of [Plaintiff's] non-exertional limitations," and also failed to identify the evidence which undermines Plaintiff's subjective allegations, the record demonstrates that the ALJ made express findings in evaluating Plaintiff's subjective allegations as described in SSR 96-7p. The ALJ found in his opinion that Plaintiff had severe impairments including ischemic heart disease, status post-angioplasty; congestive heart failure; hypertension; obesity; and a history of tobacco abuse. Tr. 21. He found that the medical evidence established that Plaintiff has medically determinable impairments capable of producing the subjective symptoms of which he complains. *Id*. As noted above, the ALJ considered Plaintiff's testimony and claims regarding his activities, restrictions, symptoms, the details of his subjective complaints, the effects of his medications, and the palliative measures used. Tr. 22. The ALJ specifically addressed each of these factors in his opinion, extensively discussing the medical record and Plaintiff's testimony regarding his subjective

allegations, the symptoms he experiences, the treatment prescribed and undertaken, and the efforts Plaintiff made to relieve such symptoms.

Plaintiff argues that the ALJ failed to clearly articulate reasons for rejecting the Plaintiff's subjective complaints of pain.  Plaintiff notes that he testified that he was required to sit with his feet elevated, could not sit for extended periods of time, and spent most of his time resting, and he argues that these subjective complaints are inconsistent with the full range of sedentary level work activity. Plaintiff argues that under SSR 96-7p and Fifth Circuit precedent, the ALJ was required to make express findings of fact as to the credibility of each of these subjective allegations of limitations and describe the weight given to Plaintiff's testimony as well as to any other evidence that either supported the conclusions of the ALJ or contradicted Plaintiff's testimony.

A claimant's testimony of pain is insufficient to establish disability.  *See* 42 U.S.C. § 423(d)(5)(A)("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability.").  The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The ALJ found that Plaintiff's complaints were not "fully credible," acknowledging that his impairments "may create certain pain and discomfort," but finding that the record as a whole did not support a finding that [the Plaintiff's] impairments are as limiting as he alleges." Tr. 23.  The ALJ noted that Dr. Kuprianowicz had completed a form indicating that Plaintiff was disabled, but he also indicated that Plaintiff could work in an office environment with few physical duties. *Id.*   He correctly noted that he was not bound to accept even a treating physician's conclusion as to disability.  Tr. 23.  "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'  These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'"  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).   As such, the ALJ

appropriately did not accord special weight to Dr. Kuprianowicz's opinion that Plaintiff was disabled and unable to perform even sedentary duties.

The ALJ also noted that a progress note from May 2, 2003, indicated Plaintiff's report of chest pain, as well as Plaintiff's denial of other symptoms. Tr. 23. He also noted that June 27, 2003, discharge instructions from the Odessa Regional Hospital indicated that Plaintiff was to limit his activities, with instructions not to push, pull, or lift items over five pounds. *Id*. The ALJ observed that these instructions did not constitute a long-term functional capacity assessment by an acceptable medical source. He also noted that although Plaintiff alleged that he cannot walk far, he also indicated that he walks for about 20 minutes for exercise; and although he testified that he spent most of his time resting, he also drove his child to school. Tr. 22.

Plaintiff also argues that the ALJ "never meaningfully evaluated Chavera's daily activities, or the measures he uses for relief of his symptoms." Pl. Brief at 14. The ALJ addressed Plaintiff's testimony as to his daily activities, as well as other reports of his daily activities, and Plaintiff's testimony indicating that he spent most of his time resting, was unable to perform household chores or yard work, and that he sat with his feet elevated because of swelling in his legs. Tr. 22.

Plaintiff further takes issue with the ALJ's consideration of his testimony indicating that he performed yard work, failed to more diligently seek medical care, and continued to smoke, as related to his credibility finding. Plaintiff alleges that the ALJ exclusively relied upon these three factors in making his credibility determination. The record clearly demonstrates that the ALJ did not rely exclusively upon these three factors, having extensively discussed Plaintiff's medical records and testimony in his opinion. Although the ALJ specifically noted Plaintiff's testimony that he was unable to obtain further medical treatment because of the cost, Plaintiff argues that the ALJ was required to make a specific fact finding as to whether he believed Plaintiff's explanation for the lack of medical treatment.

Plaintiff further argues that the ALJ should not have considered his failure to immediately stop smoking, with relation to his credibility finding.  The ALJ noted in his opinion that although Plaintiff reported that he experienced shortness of breath and dizziness, the record indicated significant breaks in his pursuit of medical care.  Tr. 22.  He specifically noted that the record indicated that Plaintiff did not seek treatment from March 19 through August 29, 2002, and from September 24, 2002, through March 21, 2003.  *Id.*  The ALJ found that Plaintiff's failure to more diligently seek medical care was an inconsistency relied upon in finding that Plaintiff was not fully credible, noting that "a failure to seek care tends to suggest a tolerable symptomology." Tr. 22.  The ALJ also noted that Plaintiff continued to smoke until just one week before his hearing, despite the advice of his physicians indicating that he should quit.  He noted that he *could not* find that if Plaintiff were to have ceased smoking, the adverse cardiopulmonary limitations would dissipate. But he indicated that he was "persuaded that [Plaintiff's] failure to follow his treating doctor's advice has (1) contributed to his diminished functioning and (2) impugned his credibility as it relates to subjective complaints," stating that Plaintiff "would not continue to nullify the treatment regimen if he was as limited as alleged." Tr. 22.  The ALJ noted that he was aware that Plaintiff had testified that he does not seek medical care because of financial limitations.  Tr. 24.

SSR 96-7p provides that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." The ALJ here found that Plaintiff's level of treatment was inconsistent with the symptoms he complained of, and he also noted that Plaintiff failed to follow the advice of his doctors who opined that he should quit smoking. SSR 96-7p further indicates that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that

the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." The ALJ specifically noted Plaintiff's testimony that he did not seek medical care because of financial limitations. Plaintiff argues that under SSR 96-7p the ALJ was required to request that he provide an explanation and factor such explanation into the credibility finding. Pl. Brief at 15. However, the ALJ's opinion demonstrates that he in fact considered Plaintiff's testimony that he did not seek further medical care because of the cost. The ALJ also noted that Plaintiff did not proceed with further testing because of lack of insurance.

Plaintiff argues that his failure to immediately stop smoking despite the advice of his physician is not a legitimate or rational basis to find that he is lacking in credibility, citing *Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000). In *Shramek*, the Seventh Circuit found that the ALJ erred by considering the claimant's failure to stop smoking. *Id*. The Court noted that its holding was based upon 20 C.F.R. § 404.1530, which deals with the denial of benefits for failure to follow prescribed treatment, and found that the ALJ's decision was based on a misuse of the regulation. *Id*. The Court, citing a prior decision, noted : "[e]ssential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work." *Id* at 812-13 (quoting *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). However, as noted above, the text of SSR 96-7p specifically provides that the ALJ may find a claimant less credible if the individual is not following the treatment as prescribed. *See* SSR 96-7p. Moreover, the ALJ noted that this was not a denial based solely upon 20 C.F.R. § 404.1530; rather he indicated that he had considered such failure in making his credibility determination. Tr. 22. Plaintiff further argues that the ALJ erred by noting that Plaintiff's "failure to follow his treating doctor's advice has contributed to his diminished functioning." *See* Tr. 22. Dr. Kim advised Plaintiff to stop smoking, as did Dr. Kuprianowicz. Tr. 213, 218. Dr. Raj Pandya noted that Plaintiff smoked cigarettes and

drank coffee, despite his heart attack and transient ischemic attack.  Tr. 225.  Even if the ALJ's statement indicates that he is "playing doctor," such error is harmless.  *See Frank*, 326 F.3d at 622 (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).  The ALJ appropriately considered Plaintiff's failure to follow the advice of his various doctors in making his credibility determination.

I find that the ALJ did not err in considering Plaintiff's level and frequency of treatment in making his credibility finding.  I further find that the ALJ did not err in considering Plaintiff's smoking in making his credibility determination.

Plaintiff argues that the ALJ erred in considering his work doing odd jobs prior to the alleged onset date of disability in making his credibility determination.  Plaintiff's testimony was that he worked doing odd jobs after leaving his job at the car lot.  Tr. 46.  However, Plaintiff testified that he had not worked at all since January 2002.  The record demonstrates that the ALJ indeed addressed Plaintiff's testimony that he had performed odd jobs, such as yard work.  Tr. 18.  He also noted Plaintiff's testimony that he was unable to assist with household chores or yard work, that he sat with his feet elevated, that he was unable to walk far, and that strenuous postural movements aggravated his symptoms.  Tr. 22.

The ALJ specifically found that Plaintiff's work doing odd jobs did not constitute substantial gainful activity.  Tr. 18.  The ALJ also noted Plaintiff's testimony that he was, at the time of the hearing, currently unable to walk far or do household chores or yard work.  While the ALJ may have factually erred in noting that Plaintiff worked (albeit at non-SGA levels) after the alleged onset date, Plaintiff fails to establish any prejudice from this error.  The court will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced by the deficiencies he alleges.  *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)).  Procedural improprieties will constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to

support the ALJ's decision." *Morris*, 864 F.2d at 335.  As noted herein, the ALJ's credibility finding was supported by substantial evidence in the record, notwithstanding this error.  Therefore, while the ALJ did err insofar as he indicated that he considered Plaintiff's post-onset date work doing odd jobs in making his credibility determination, I find that the ALJ's credibility determination was otherwise supported by substantial evidence and that this error was harmless.

The record demonstrates that the ALJ carefully considered Plaintiff's subjective allegations and the other evidence in the record in making his credibility determination.  The ALJ correctly exercised his responsibility to resolve questions of credibility.  *Masterson*, 309 F.3d at 272.   The record demonstrates that the ALJ appropriately considered the record as a whole in making his credibility determination.   Substantial evidence supports the ALJ's credibility determination, entitling that determination to judicial deference. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  I therefore find that the ALJ did not commit prejudicial error in making his credibility determination.

**B.**     **Whether the ALJ erred in weighing and considering the opinion of Plaintiff's treating physician.**

Plaintiff alleges that the ALJ failed to appropriately weigh and consider the opinions of Plaintiff's treating physician in making his RFC determination.   Plaintiff argues that the ALJ impermissibly rejected in part the May 20, 2003, opinion of Dr. Kuprianowicz.  Plaintiff notes that "[t]here is some indication that he gave [Dr. Kuprianowicz's] opinion some weight, as he found Chavera limited to sedentary work," but he did not accept the opinion in full.   Pl. Brief at 20. Plaintiff argues that in choosing to accept certain portions of Dr. Kuprianowicz's opinion, the ALJ improperly picked and chose only the evidence that supported his decision and failed to evaluate this opinion under the factors set forth in 20 C.F.R. § 404.1527(d) as required.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Under the applicable regulations, unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 416.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456.

Plaintiff argues that the ALJ erred by failing to discuss and apply the factors set forth in 20 C.F.R. § 416.1527(d) in discounting Dr. Kuprianowicz's May 20, 2003, opinion.  The ALJ indicated in his opinion that Dr. Kuprianowicz completed the May 20, 2003, form wherein he opined that Plaintiff was disabled and could not perform even sedentary duties, yet also acknowledged that Plaintiff could work in an office environment.  Tr. 23.  The ALJ noted that a May 2, 2003, progress note indicated that Plaintiff reported chest pains but denied any other symptoms.  Tr. 23.

Defendant argues that the ALJ adequately considered the applicable factors, noting that Dr. Kuprianowicz was Plaintiff's treating physician; describing his treatment of Plaintiff since January 2002; noting that the form containing Dr. Kuprianowicz's opinion was not prepared for a legitimate medical purpose; noting that his opinions conflicted internally (that Plaintiff was disabled and could

not perform sedentary duties, yet also reported that Plaintiff could answer phones); and noting that the treating physician's opinions conflicted with his own progress notes.  Def. Brief at 8-9, Tr. 18-21, 23.

However, the record further demonstrates that the ALJ did not fail to "give *any* weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456 (emphasis supplied).  As Plaintiff correctly notes, the ALJ accepted certain limitations noted by Dr. Kuprianowicz.  The ALJ limited Plaintiff's RFC to the full range of sedentary work.  Plaintiff correctly notes that Dr. Kuprianowicz opined that he was limited to less than the full range of sedentary work, being unable to sit for more than 3 to 4 hours per day, being unable to stand or walk, and being able to lift only one pound for no more than 2 hours per day.  Tr. 258.  The regulations provide that:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a).

Dr. Kuprianowicz indicated in a progress note dated April 1, 2003, that Plaintiff was feeling better and denied any chest pain or shortness of breath.  Tr. 263.  He also noted in his May 2, 2003, progress note that Plaintiff complained of having some chest pain but was "otherwise doing well." Tr. 260.  Dr. Pandya noted Plaintiff's report of walking some and being able to lift and carry 10 pounds.  Tr. 225.  Dr. Pandya noted that Plaintiff reported that he "usually sits down" and, if he is at home, "usually elevates his leg" and that he can sit in one place for 30 minutes. *Id.* Plaintiff testified  to sitting (and elevating his legs) for about 3 hours during the day. Tr. 50.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

I find that the ALJ did not entirely reject the opinion of Dr. Kuprianowicz but rather incorporated into his RFC analysis those limitations most supported by Dr. Kuprianowicz's own treatment notes and by the record. The ALJ noted that he was not required to accept the opinion of even a treating physician where such opinion is not supported by evidence in the record. I find that the opinion of the ALJ demonstrates that he adequately considered these factors in weighing Dr. Kuprianowicz's opinion. Moreover, the ALJ specifically noted that he did not accept those opinions of Dr. Kuprianowicz indicating that Plaintiff was unable to work insofar as they were not based on objective medical clinical findings and were inconsistent with his treating records. I find that the ALJ did not err in considering the opinions of Dr. Kuprianowicz, Plaintiff's treating physician, nor did he err by failing to adopt Dr. Kuprianowicz's opinions on the limitations imposed by Plaintiff's impairments where such opinions were not consistent with Dr. Kuprianowicz's treating records or the record as a whole.

Pursuant to SSR 96-6p, the findings of fact made by state agency medical consultants ("SAMCs") regarding the nature and severity of an individual's impairment "must be treated as expert opinion evidence of nonexamining sources" by the ALJ. The ALJ is "not bound by findings made by state agency or other program physicians and psychologists, but [he] may not ignore these

opinions and must explain the weight given to the opinions in their decisions." *Id*.  However, the opinions of SAMCs "can be given weight only insofar as they are supported by evidence in the case record."

In his decision the ALJ noted that he had reviewed the determinations of the SAMCs.  Tr. 23.  He indicated his consideration of such opinions under SSR 96-6p.  *Id*.  He also indicated that he had considered the sworn testimony of the Plaintiff, as well as the medical evidence of the treating and examining physicians, in making his RFC determination.  Tr. 23.  He ultimately concluded that Plaintiff could perform the exertional demands of sedentary level work.  *Id*.

It  does not appear from his opinion and this record that the ALJ improperly ignored any portion of Plaintiff's records.  Neither did he "pick and choose" only the evidence that supported his position.  *See Loza*, 219 F.3d at 393 (internal citations omitted).  Rather, the ALJ appropriately considered the record as a whole.  *Id*.  He included information about Plaintiff's symptoms, medications, treatment, and limitations, both as reported by Plaintiff and as reflected in the record. The record contains substantial evidence to support the RFC assessment of the ALJ. He did not err in evaluating the opinions of the SAMCs or by failing to incorporate limitations noted by the treating physician into his RFC finding.

**C.**   **Whether the ALJ erred in considering the combination of Plaintiff's impairments, including obesity.**

Plaintiff argues that the ALJ committed legal error by failing to consider the combined impact of all of his impairments.  Plaintiff further argues that the ALJ failed to assess his obesity in the required manner.  He specifically notes that his weight and body mass index ("BMI") would be classified as extreme.  He  alleges that the ALJ's decision failed to comply with the requirements of Social Security Ruling 02-01p (September 12, 2002)("SSR 02-01p").

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

In his opinion the ALJ found that Plaintiff has impairments including ischemic heart disease, status-post angioplasty, congestive heart failure, hypertension, obesity, and a history of tobacco abuse. Tr. 21. He found these impairments were "severe" but did not, singularly or in combination, meet or equal any criteria in the Listing of Impairments. *Id.* The ALJ also stated that he had "considered the several impairments as I made this functional capacity determination, but there is no indication that these impairments combine to impose additional limitations upon this already limited capacity for only sedentary work activities," citing 20 C.F.R. §§ 404.1545 and 416.945 and SSR 02-01p.

Plaintiff argues that in his decision, the ALJ failed to discuss the interaction or cumulation of the claimant's medical impairments. However, the ALJ's opinion demonstrates that he discussed these impairments in combination. He discussed the medical findings as to Plaintiff's impairments together. Tr. 18-21. He included Plaintiff's subjective allegations in his discussion of Plaintiff's combined impairments. Tr. 21-23. Moreover, in evaluating Plaintiff's credibility, the ALJ noted that he had considered Plaintiff's tobacco use and the degree to which it affected his functioning. Tr. 22. Plaintiff's argument that the ALJ failed to properly consider the cumulative affect of his impairments is without merit.

Plaintiff also argues that the ALJ failed to appropriately consider his obesity under SSR 02-01p. Plaintiff specifically argues that "even if the objective medical evidence does not fully

support Chavera's symptoms when the impairments are considered separately, there is a legitimate medical basis for finding that the objective medical evidence fully supports Chavera's symptoms when the cumulative impact of those impairments is considered." Pl. Reply at 11.

SSR 02-01p was adopted when § 9.09 of the Listing of Impairments applying to obesity was deleted because cases under this listing "indicated that the criteria in the listing were not appropriate indicators of listing-level severity" and "the criteria in listing 9.09 did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." SSR 02-01p. Under this Ruling, the Commissioner will not make assumptions about the severity or functional effects of obesity combined with other impairments. *Id.* Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *Id.* Evaluation in each case is based on the information in the case record. *Id.* When obesity is identified as a medically determinable impairment, the Commissioner will consider any functional limitations resulting from the obesity in the RFC assessment in addition to any limitations resulting from any other physical or mental impairments identified. *Id.*

Plaintiff argues that SSR 02-01p provides a framework for accepting his subjective reports that his symptoms prevent him from performing any full time competitive work activity, when considered in conjunction with the objective medical evidence within the context of the cumulative impact of his obesity, orthopedic impairments, and pulmonary impairments. Pl. Reply at 12.

Dr. Pandya noted that "part of [Plaintiff's] medical problem [is] also due to morbid obesity, being a relatively short guy he has [] 287 pounds of weight." Tr. 225. Dr. Pandya noted that Plaintiff could lift and carry 10 pounds of weight and that his leg pain was secondary to venous stasis and osteoarthritis of the knee, noting that Plaintiff did not experience pain from exercise except when he walks more than one and a half blocks. Tr. 225. Dr. Pandya opined that Plaintiff had "decreased breath sound, both bases, probably secondary to morbid obesity." *Id.*

The ALJ found that there was no indication that Plaintiff's impairments combine to imposed additional limitations, citing SSR 02-01p.   Plaintiff argues "there is no focus or real consideration on Chavera's impairments under SSR 02-1p," and further argues that even if the objective medical evidence does not fully support his subjective claims as to his limitations, "there is a legitimate medical basis" for finding that the combined effect of his impairments, including obesity, did indeed support his subjective claims.  SSR 02-01p does not, however, require the adjudicator to make any "assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-01p.  In fact, the ruling specifically provides that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment," and instructs the adjudicator to  evaluate each case based on the information in the case record.  *Id.*

The objective medical evidence in the record does not indicate that Plaintiff's obesity increased the functional limitations in combination with his other impairments beyond the degree recognized by the ALJ and incorporated into his RFC finding.  While SSR 02-01p specifically notes that in cases involving obesity, the Commissioner "may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings," there is no evidence in the record to demonstrate that Plaintiff's obesity, considered  in combination with his other impairments, has increased the severity or functional limitations of his impairments to a greater degree than found by the ALJ.  *Id.*

The record demonstrates that the ALJ appropriately considered Plaintiff's obesity.  He noted the clinical findings in the record indicating Plaintiff's obesity.  Tr. 20.  He discussed Plaintiff's subjective allegations.   Tr. 22-3.   He also  specifically noted  that he considered Plaintiff's impairments singularly and in combination at step 3 of the sequential evaluation process and found

that there was no indication that these impairments combined to impose additional limitations, citing

SSR 02-01p.  Tr. 23.  I find that the ALJ did not err in evaluating Plaintiff's obesity.

**D.      Whether the ALJ incorrectly applied the Grids to direct a finding of "not disabled."**

Plaintiff argues that because the RFC finding of the ALJ was not supported by substantial

evidence, the ALJ incorrectly applied the Grids to direct a finding of not disabled.  As Plaintiff

correctly notes, where a claimant cannot perform the full range of a specific level of work activity

or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids,

although they may be used as a framework.  Application of the Grids is appropriate "when it is

established that a claimant suffers only from exertional impairments, or that the claimant's

nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v.*

*Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).  However, the ALJ is not required to incorporate

limitations into his RFC finding or the hypothetical questions presented to the VE that he did not

find to be supported in the record.  *See Morris*, 864 F.2d at 336.

Pain, even if not disabling, "may be another nonexertional limitation on the range of jobs

open to claimants." *Lawler v. Heckler*, 761 F.2d 195, 198 n.3 (5th Cir. 1985)(*citing Carter v.*

*Heckler*, 712 F.2d 137, 142 (5th Cir. 1983)).  However, "[t]here must be clinical or laboratory

diagnostic techniques which show the existence of a medical impairment which could reasonably

be expected to produce the pain alleged." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990)

(citing *Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir. 1988)). Pain constitutes a disabling

condition under the Social Security Act only when it is "constant, unremitting, and wholly

unresponsive to therapeutic treatment." *Selders*, 914 F.2d at 618-19 (internal citations omitted).

Plaintiff argues that application of the Grids is inappropriate, given his subjective complaints

of pain, and the non-exertional limitations noted by Dr. Kuprianowicz in his evaluation.  I previously

found that the ALJ did not err in evaluating Plaintiff's subjective allegations nor did he err by failing

to accept all of the limitations noted by Dr. Kuprianowicz in his evaluation.   The ALJ's RFC

determination was supported by substantial evidence, including his determination that Plaintiff has

no non-exertional limitations.   Therefore, the ALJ did not err in applying the Grids to direct a

finding of not disabled at step 5 of the sequential evaluation process.   The ALJ did not apply

incorrect legal standards and his decision was supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court

recommends that the United States District Judge affirm the Commissioner's decision and dismiss

the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and

recommendation on the parties.   Pursuant to Title 28, United States Code, Section 636(b)(1) and

Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to

object to these findings, conclusions, and recommendation must serve and file written objections

within 11 days after being served with a copy.   A party filing objections must specifically identify

those findings, conclusions, or recommendation to which objections are being made.   The District

Court need not consider frivolous, conclusory, or general objections.   A party's failure to file such

written objections to these proposed findings, conclusions, and recommendation shall bar that party

from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.

Ct. 466, 472 (1985).   Additionally, any failure to file written objections to the proposed findings,

conclusions, and recommendation within 11 days after being served with a copy shall bar the

aggrieved party from appealing the factual findings and legal conclusions of the United States

Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.   *See*

*Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 7th day of February, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**